EMN:CMP/WDS
F.#2013R00444

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
– – – – – – – – – – – – – – – – – –X

| | |
|---|---|
| UNITED STATES OF AMERICA | S U P E R S E D I N G<br>I N F O R M A T I O N |
| - against - | Cr. No. <u>13-259 (S-1)(KAM)</u> |
| JOAN LUIS MINIER LARA, | (T. 18, U.S.C. §§ 982(a)(1), |
| | 982(a)(2)(B), 1029(a)(5), 1029(b)(2), |
| Defendant. | 1029(c)(1)(A)(ii), 1029(c)(1)(C), |
| | 1956(a)(2)(A), 1956(h), 2 and |
| | 3551 <u>et</u> <u>seq.</u>; T. 21, U.S.C., § 853(p)) |

– – – – – – – – – – – – – – – – – –X

THE UNITED STATES ATTORNEY CHARGES:

<u>INTRODUCTION</u>

At all times relevant to this Superseding Information, unless otherwise
indicated:

1.      In or about and between January 2011 and April 2013, in the Eastern
District of New York and elsewhere, the defendant JOAN LUIS MINIER LARA, together
with others, participated in an international conspiracy to use sophisticated cybercrime
techniques to steal confidential financial account information that was then used to withdraw
currency from automated teller machines ("ATMs") located at banks in the United States and
elsewhere in a scheme known variously as a "cashout," "PIN cashing" or "carding" scheme.

2.      This scheme arose from intrusions by hackers into the computer
systems of financial service providers and other businesses in the United States and abroad

for the purpose of stealing confidential financial account information, including account

numbers and personal identification numbers ("PINs") for prepaid debit cards, among other

things.  The hackers targeted specific victim financial service providers, planned the

intrusions and executed the attacks.  In order to carry out the scheme, the hackers relied upon

a trusted group of associates to disseminate the stolen financial information globally via the

Internet and other means to leaders of "cashing crews" around the world.  The cashing crews

consisted of individuals known as "cashers" or "cashiers."  The leaders of these crews were

responsible for planning, organizing and executing the cashouts in which the cashers

conducted hundreds and in one case, thousands, of fraudulent transactions over a matter of

hours via ATM withdrawals and fraudulent purchases using plastic cards encoded with stolen

account information.

        3.     The defendant JOAN LUIS MINIER LARA was a member of a New

York-based cashing crew.

A.     The RAKBANK Unlimited Operation

        4.     In or about December 2012, an Indian credit card processor that

handles Visa and MasterCard prepaid debit cards, whose identity is known to the United

States Attorney, was the victim of a network intrusion.  Those responsible for this intrusion

increased the withdrawal limits on prepaid MasterCard debit card accounts issued by the

National Bank of Ras Al-Khaimah PSC, also known as "RAKBANK," located in the United

Arab Emirates.  This type of scheme is known as an "unlimited operation."  In such

operations, hackers manipulate account balances and in some cases security protocols to

2

effectively eliminate any withdrawal limits on individual accounts. As a result, even a few compromised bank account numbers can result in tremendous financial loss to the victim financial institution.

5.     Between approximately December 21, 2012 and December 22, 2012, five account numbers for the compromised RAKBANK accounts with increased balances were distributed to individuals located in approximately 20 countries around the world, including the United States. The individuals receiving these card numbers encoded the data onto magnetic stripe cards and used those cards to withdraw funds from ATMs in their respective locations. In total, more than 4,500 ATM transactions were conducted using the compromised RAKBANK account data, resulting in a total loss of approximately $5 million.

6.     The defendant JOAN LUIS MINIER LARA and his co-conspirators used one specific compromised RAKBANK account number ("the compromised RAKBANK account number") to conduct approximately 705 fraudulent ATM withdrawals totaling approximately $382,597 in and around New York City. Globally, the compromised RAKBANK account number was used to conduct approximately 1,083 fraudulent transactions for a total loss of approximately $628,985.

B.     The Bank Muscat Unlimited Operation

7.     In or about February 2013, a credit card processor based in the United States that handles Visa and MasterCard prepaid debit cards, whose identity is known to the United States Attorney, was the victim of a network intrusion that resulted in another

3

unlimited operation. In this scheme the withdrawal limits were increased for MasterCard prepaid debit card accounts issued by Bank Muscat, located in Oman.

8.      Between approximately February 19, 2013 and February 20, 2013, 12 account numbers for the compromised Bank Muscat accounts with increased balances were distributed to individuals located in approximately 24 countries around the world, including the United States. The Bank Muscat unlimited operation resulted in approximately $40 million in losses over the course of less than 24 hours.

9.      The defendant JOAN LUIS MINIER LARA and his co-conspirators used one specific compromised Bank Muscat account number ("the compromised Bank Muscat account number") to conduct approximately 2,904 fraudulent ATM withdrawals in and around New York City totaling approximately $2.4 million. Globally, the compromised Bank Muscat account number was used to conduct approximately 11,777 fraudulent transactions for a total loss of approximately $8.9 million.

COUNT ONE
(Conspiracy to Commit Access Device Fraud)

10.     In or about and between January 2011 and April 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOAN LUIS MINIER LARA, together with others, did knowingly and with intent to defraud conspire to effect transactions with one or more access devices issued to another person or persons, to wit: debit cards used to withdraw funds from ATMs, to receive payment and any other thing of value during a one-year period, the aggregate value of which

4

was equal to or greater than $1,000, in a manner affecting interstate commerce, contrary to Title 18, United States Code, Section 1029(a)(5).

11.     In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendant JOAN LUIS MINIER LARA, together with others, committed and caused to be committed, among others, the following:

## OVERT ACTS

(a)  On or about December 22, 2012, the defendant JOAN LUIS MINIER LARA conducted approximately four withdrawals totaling approximately $3,212 using the compromised RAKBANK account number from an ATM located in New York, New York.

(b)  On or about February 19, 2013, the defendant JOAN LUIS MINIER LARA conducted approximately two withdrawals totaling approximately $1,606 using the compromised Bank Muscat account number from an ATM located in New York, New York.

(Title 18, United States Code, Sections 1029(b)(2) and 3551 et seq.)

## COUNT TWO
(Access Device Fraud – RAKBANK Unlimited Operation)

12.     On or about December 22, 2012, within the Southern District of New York, the defendant JOAN LUIS MINIER LARA, together with others, did knowingly and with intent to defraud effect transactions with one or more access devices issued to another person or persons, to wit: debit cards used to withdraw funds from ATMs, to receive

payment and any other thing of value during a one-year period, the aggregate value of which was equal to or greater than $1,000, in a manner affecting interstate commerce.

(Title 18, United States Code, Sections 1029(a)(5), 1029(c)(1)(A)(ii), 2 and 3551 et seq.).

COUNT THREE
(Access Device Fraud – Bank Muscat Unlimited Operation)

13.     On or about February 19, 2013, within the Southern District of New York, the defendant JOAN LUIS MINIER LARA, together with others, did knowingly and with intent to defraud effect transactions with one or more access devices issued to another person or persons, to wit: debit cards used to withdraw funds from automated teller machines, to receive payment and any other thing of value during a one-year period, the aggregate value of which was equal to or greater than $1,000, in a manner affecting interstate commerce.

(Title 18, United States Code, Sections 1029(a)(5), 1029(c)(1)(A)(ii), 2 and 3551 et seq.).

COUNT FOUR
(Money Laundering Conspiracy)

14.     In or about and between January 2011 and April 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOAN MINIER LARA, together with others, did knowingly and intentionally conspire to transport, transmit and transfer monetary instruments and funds from one or more places in the United States to one or more places outside the United States (a) with the intent

6

to promote the carrying on of specified unlawful activity, to wit: the crimes charged in

Counts One through Three and (b) knowing that the monetary instruments and funds

involved in the transportation, transmission and transfer represented the proceeds of some

form of unlawful activity and knowing that such transportation, transmission and transfer

was designed in whole and in part to conceal and disguise the nature, the location, the source,

the ownership and the control of the proceeds of specified unlawful activity, to wit: the

crimes charged in Counts One and Two, contrary to Title 18, United States Code, Sections

1956(a)(2)(A) and 1956(a)(2)(B)(i).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

## COUNT FIVE
(Money Laundering)

15.     In or about January 2013, within the Eastern District of New York and

elsewhere, the defendant JOAN LUIS MINIER LARA, together with others, did knowingly

and intentionally transport, transmit and transfer monetary instruments and funds from one or

more places in the United States, to wit: New York, to one or more places outside the United

States, to wit: Romania, with the intent to promote the carrying on of specified unlawful

activity, to wit: the crimes charged in Counts One through Three.

(Title 18, United States Code, Sections 1956(a)(2)(A), 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
AS TO COUNTS ONE THROUGH THREE

16.     The United States hereby gives notice to the defendant that, upon his

conviction of any of the offenses charged in Counts One through Three, the government will

7

seek forfeiture in accordance with (a) Title 18, United States Code, Section 982(a)(2)(B), which requires any person convicted of such offenses to forfeit any property constituting or derived from proceeds obtained directly or indirectly as a result of such offenses, and (b) Title 18, United States Code, Section 1029(c)(1)(C), which requires any person convicted of such offenses to forfeit any personal property used or intended to be used to commit the offenses.

17.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 982(b)(1) and 1029(c)(2), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(2)(B) and 1029(c)(1)(C); Title 21, United States Code, Section 853(p))

8

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS FOUR AND FIVE

18.     The United States hereby gives notice to the defendant that, upon his

conviction of either of the offenses charged in Count Four and Count Five, the government

will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1),

which requires any person convicted of such offenses to forfeit all property, real or personal,

involved in such offenses, or any property traceable to such offenses.

19.     If any of the above-described forfeitable property, as a result of any act

or omission of the defendant:

        (a)     cannot be located upon the exercise of due diligence;

        (b)     has been transferred or sold to, or deposited with, a third party;

        (c)     has been placed beyond the jurisdiction of the court;

        (d)     has been substantially diminished in value; or

        (e)     has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p),

as incorporated by Title 18, United States Code, Section 982(b), to seek forfeiture of any

other property of the defendant up to the value of the forfeitable property described in this

forfeiture allegation.

(Title 18, United States Code, Section 982(a)(1); Title 21, United States Code,

Section 853(p))



LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK